# OIN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OLYMPIC COMMITTEE, a federally chartered corporation,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>TOBYHANNA CAMP CORPORATION d/b/a CAMP OLYMPIK, et al.,<br><br>　　　　Defendants. | CIVIL ACTION NO. 3:10-CV-162<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

The United States Olympic Committee (USOC) brought this action to enjoin the defendants, who were doing business as "Camp Olympik," from using the word "Olympic" (or its simulations) or the Olympic symbol in their promotional activities. Camp Olympik failed to appear in the action. Default was entered, and now the USOC applies for a default judgment against the camp. For the reasons discussed below, the USOC's motion for default judgment will be granted in part and denied in part, and the USOC will be directed to submit additional evidence to support its request for attorney's fees and costs.

## **I. Background**

This action arose out of Camp Olympik's alleged use of words and symbols in violation of the USOC's common law and statutory rights. The USOC's complaint[1] alleges

---

[1] The facts in this section are those alleged in the complaint. Because a default judgment will be granted, the facts alleged in the complaint are presumed to be true. *Comdyne I, Inc. v Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal citations omitted).

that, as early as June 2008, the defendants operated a children's summer camp under the trade name "Camp Olympic." Camp Olympic offered a range of athletic activities, with an emphasis on sports featured in the Olympic Games, such as basketball, tennis, hockey, judo, archery, and soccer. The defendants' website sported the camp's logo, consisting of the word "Olympic" and the five-ring Olympic symbol, placed so that it slightly overlapped the "c" in "Olympic."[2] A cartoon drawing of an Olympic torch served as the lowercase "l" in the work "Olympic."

After discovering that the defendants were using the Olympic name and symbol, the USOC, by written and oral demand, insisted that the camp cease using Olympic words and symbols in violation of the Olympic and Amateur Sports Act. To underscore its position, the USOC provided the defendants with a copy of the Act's relevant provisions.

Nearly a year passed, and in May of 2009 the defendants changed their website. The new incarnation branded the sports camp as "Camp Olympik," with a "k" (the "l" in "Olympik" was still drawn as a torch). The five rings, once interlocking, were pushed apart so that they appeared bowling-pin style, with three rings on the top and two on the bottom.

The USOC remained unmollified. It informed the defendants by letter that the new website was no better than the old, because it still "tended to cause confusion or mistake, to deceive, or to falsely suggest a connection" with the Olympic Games and the USOC. After what the USOC characterized as "repeated attempts since July 2009 to obtain Defendant's compliance with the Olympic and Amateur Sports Act," all to no avail, they

---

[2] The symbol consisted of five interlocking rings in the same arrangement as the Olympic Symbol. Within each ring was an image of what the Court assumes to be campers, engaged in sport activities.

2

commenced the present action on January 22, 2010, seeking injunctive relief, damages, fees, and costs.

Within the time specified by Federal Rule of Civil Procedure 4(m), the USOC served the summons and complaint. The defendants have yet to appear or defend this action. Pursuant to Rule 55(a) the clerk entered a default on June 15, 2010. The USOC moved for a default judgment against defendant Tobyhanna Camp Corporation (the camp). This motion is presently before the Court. The USOC seeks a permanent injunction restraining the camp from using the five-ring symbol or word "Olympic" in violation of relevant law. The USOC further requests its fees, to the tune of $9,379.10, incurred in relation to the case, as well as its costs.

## II. Discussion

### A. Default Judgment

Under Federal Rule of Civil Procedure 55, once the clerk has entered a default a party may apply to the court for a default judgment. "The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

Default is disfavored because it contravenes the strong policy in favor of resolving disputes on the merits. *See, e.g.*, *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 75 (3d Cir. 1987); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable."). A district court should consider three factors before entering default judgment: prejudice to

3

the plaintiff if default is denied; whether the defendant appears to have a meritorious defense; and whether the defendants's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

This calculus, however, is "necessarily one-sided" when a defendant has "failed to appear or respond in any fashion to the complaint." *T & C Leasing Inc. v. BBMC, LLC*, No. 1:09-cv-873, 2010 WL 231128, at *2 (M.D. Pa. Jan. 14, 2010). "When a defendant fails to appear . . . the district court . . . is authorized to enter a default judgment based solely on the fact that the default has occurred." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

Here, the factors weigh in favor of granting a default judgment. The camp has failed to appear in the action or defend the claims against it. There is no apparent excuse for the camp's default; the USOC has shown that the camp was properly served its copy of the summons and complaint. (*See* Doc. Nos. 5, 6.) Thus, the Court finds that the camp's delay was due to its own culpable conduct. Based on the allegations in the complaint, no obvious defense appears available to the camp. Thus, the Court finds that default judgment is appropriate.

**B. The USOC's Claim Under the Olympic and Amateur Sports Act**

When default judgment is to be entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal citations omitted).

The USOC claims that the camp violated the Olympic and Amateur Sports Act. In pertinent part, the Act provides that "[the USOC] has the exclusive right to use . . . the

4

symbol of the International Olympic Committee, consisting of 5 interlocking rings . . . the word[ ] 'Olympic' . . . ." 36 U.S.C. § 220506. The Act creates a cause of action against a person who "without the consent of the [USOC], uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition," *inter alia*, the Olympic symbol, the word "Olympic," or any simulation thereof that tends to falsely suggest an association with, or authorization by, the USOC. *Id.*

The facts in the complaint, deemed true for purposes of default judgment, show that the USOC is entitled to relief. The camp has persisted in using simulations of both the word "Olympic" and the Olympic symbol on its website. As evidenced by the current action, the camp obviously lack the consent of the USOC. The Court finds that the website's use of the word "Olympic" (regardless of whether it is spelled with a "c" or a "k"), combined with the five-ring symbol (regardless of whether or not the rings interlock), is designed to induce camp attendance and to promote the camp's athletic activities. Even if the offensive elements of the website, viewed singly, do not falsely suggest the USOC's affiliation or approval, their gestalt certainly does. The combination of the word Olympik, with its "l" morphed into a torch, placed next to the five-ring symbol—all in the context of advertising an athletic camp—inescapably connotes the Olympic Games and a connection to or approbation of the USOC.

**C. The USOC's Request for a Permanent Injunction**

The USOC requests a permanent injunction enjoining the camp from using the word Olympic or the five-ring symbol in promoting its camp. §220506(c) of the Olympic and Amateur Sports Act provides that the USOC may invoke any remedies available

5

under the Lanham Act, which is codified at 15 U.S.C. § 1051 et seq. Under the Lanham Act, a court "shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right [of a trademark holder]." 15 U.S.C. § 1116(a). Thus, a permanent injunction is an available remedy. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic USOC*, 483 U.S. 522 (1987) (affirming grant of a permanent injunction against the use of the name "Gay Olympics" to describe athletic competition).

A permanent injunction may be granted "where the moving party has demonstrated that: (1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the 'balance of equities' favors granting injunctive relief." *Chao v. Rothermel*, 327 F.3d 223, 228 (3d Cir. 2003).[3]

Here, all three factors tip in favor of granting a permanent injunction. First, the Court is properly exercising jurisdiction. Second, the USOC has succeeded on the merits of its claim: the allegations in the complaint, presumed to be true, are more than adequate to establish a violation of the Olympic and Amateur Sports Act.

Finally, the balance of the equities favors granting injunctive relief. At root, trademark protection secures property rights for those whose mark distinguishes their

---

[3] The Third Circuit Court of Appeals has noted that its case law is inconsistent on whether or not the likelihood of irreparable injury is required for the grant of a permanent injunction. *See Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 185 n.5 (3d Cir. 2006) (comparing cases). For example, in *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001), the court of appeals noted that a court may grant a permanent injunction on finding, *inter alia*, that "the moving party will be irreparably injured by the denial of injunctive relief." In contrast, in *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 nn.2–3 (3d Cir. 1996), the court noted that although a *preliminary* injunction requires consideration of irreparable injury, a *permanent* injunction simply requires consideration of success on the merits. Either way, courts have found that copyright infringement is presumed to give rise to irreparable injury. *See, e.g.*, *Health Ins., Ass'n of America v. Novelli*, 211 F. Supp. 2d 23, 28 (D.D.C. 2002); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998).

services or goods. *See A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 693 (Holmes, J.) ("[Trademark law] deals with a delicate matter that may be of great value but that easily is destroyed, and therefore should be protected with corresponding care."). Like all intellectual property rights, trademark law protects "the product of [the owner's] own talents and energy, the end result of much time, effort, and expense." *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 575 (1977). Congress protected the USOC's exclusive rights to use the Olympic symbol and related words in order to facilitate the United States's "participation in the Olympic games by enhancing the USOC's opportunity to profit from licensing and sales of goods and services that derive their value from the Olympic connection . . . ." *See O-M Bread, Inc. v. U.S. Olympic Committee*, 65 F.3d 933, 937 (Fed. Cir. 1995). When others ride on the coattails of the USOC's success to promote their own services, they necessarily dilute the value of the USOC's exclusive rights. Here, the camp was notified of its infringement but defiantly kept to its course. The equities favor granting a permanent injunction prohibiting further infringement and ordering the camp to immediately cease using the trade name "Camp Olympik." Thus, the USOC's request for injunctive relief will be granted.

**D. Request for a Written Report**

The USOC requests that the camp be ordered to file with the Court, and serve upon the USOC, a written report setting forth in detail the manner in which it has complied with the permanent injunction. Whether to order such a report lies in the Court's sound discretion:

> Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on

7

> the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

15 U.S.C. § 1116(a). Although the camp has failed to respond to the USOC's written correspondence in a satisfactory manner, or even to answer the complaint, the Court disagrees that an order requiring the camp to report on its compliance is necessary given the permanent injunction. Accordingly, the permanent injunction will not include a provision directing the camp to file the requested report.

**E. The USOC's Request for Destruction of Infringing Materials**

The USOC further requests that the camp be ordered to destroy all advertisements, promotional and administrative materials (or similar) that use the word "Olympic" or its simulations or depict the Olympic symbol or its simulations. When the USOC's rights have been infringed,15 U.S.C. § 1118 provides that "the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the . . . word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation . . . shall be delivered up and destroyed." The decision whether to order the camp to "deliver[ ] up and destroy" these materials bearing the offending words and symbols is committed to the court's discretion. *See* 15 U.S.C. § 1118 ("the court *may* order" the destruction of such materials). Given that the camp will be enjoined from all future infringement, which would include the use, sale, or distribution of offending materials, an order for destruction does not appear necessary to protect the USOC's interests. *See Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 293 (C.D. Cal. 1992) ("In light of the injunction, discussed [above], to be entered by the Court in this

matter, an order requiring the destruction of any infringing articles in the possession of the defendants is unnecessary."); *Bonanza Int'l, Inc. v. Double "B,"* 331 F. Supp. 694, 697 (D. Minn. 1971) ("Section 1118 on its face permits the trial court to determine whether or not to order the delivery and destruction of the infringing items, and under the circumstances, since defendant has been enjoined from the use of the items bearing plaintiff's register marks, it is not believed that such delivery is necessary at this time."). Accordingly, the Court will deny the request to destroy infringing materials.

**F. Costs**

The USOC requests its costs, in the amount of $452.03. USOC describes these costs as including "filing fees, photocopying, telephone charges, and other administrative costs."

The "costs of the action" are recoverable as a matter of course to the prevailing party. *See* 15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d). Taxable costs are enumerated in 28 U.S.C. § 1920 and include, *inter alia*, filing fees, the costs of making copies "where the copies are necessarily obtained for use in the case," and docket fees. Local Rule 54.4 further specifies taxable costs. Although "there is a 'strong presumption' that costs are to be awarded to the prevailing party," *Reger v. The Nemours Foundation, Inc.*, 599 F.3d 285, 288 (3d Cir. 2010) (internal citations omitted), the burden is generally on the prevailing party to show that particular costs should be taxed. *See, e.g.*, *Romero v. CSX Transp., Inc.*, __ F.R.D. __, No. 06-1783, 2010 WL 2634312, at *1 (D.N.J. June 29, 2010). The prevailing party should submit evidence from which the court can determine whether each cost is recoverable. *See Yudenko v. Guarinni*, No. 06-cv-4161, 2010 WL

2490679, at *1 (E.D. Pa. June 15, 2010) (noting that "the party seeking costs for copying . . . must provide evidence of the material copied so that the court can determine whether each copy was in fact necessary.") (quoting *Montgomery Co. v. Microvote Corp.*, 2004 WL 1087196, at *7 (E.D. Pa. May 13, 2004)).

Here, the USOC has not carried its burden by demonstrating that the costs it has applied for are taxable. The submitted declaration fails to explain each cost incurred and how it fits within the ambit of 28 U.S.C. § 1920. Instead, the declaration simply gives a total sum, without tallying separate costs or giving an itemized description of the photocopying and other costs. Without a basis for determining that the costs requested are properly taxable, the Court declines to award costs at the present time, but will permit the USOC to submit additional evidence within thirty days from the date of this Order so that costs can be taxed.

## G. Attorney Fees

The USOC also requests attorney fees in the amount of $9,379.10. Under the Lanham Act, the court, "in exceptional cases," may award "reasonable attorney fees" to the prevailing party. 15 U.S.C. § 1117(a).

### 1. The Present Case is Exceptional

"Exceptional cases involve culpable conduct on the part of the losing party, 'such as bad faith, fraud, malice, or knowing infringement.'" *Acumed LLC v. Advanced Surgical Servs, Inc.*, 561 F.3d 199, 230 (3d Cir. 2009) (quoting *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000). In determining whether a case is "exceptional," the court engages in a two-step inquiry. First, the court must ascertain

whether the losing party engaged in culpable conduct. If there was culpable conduct, the court determines if the "circumstances are 'exceptional' enough to warrant a fee award." *Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007).

The Third Circuit Court of Appeals has clarified the requirement for culpable conduct: "although culpable conduct of a defendant in the act of infringement is a relevant factor to consider, it is not exclusive of other equitable considerations." *Securacomm Consulting, Inc.*, 224 F.3d at 281. Considering the totality of the equities serves the congressional purpose of "mak[ing] a trademark owner's remedy complete in enforcing his mark against willful infringers . . ." *Id.* at 280–81, (quoting S. Rep. No. 93-1400, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7137). Indeed, "Congress intended to invoke the tradition of equity, a hallmark of which is the ability to assess the totality of the circumstances in each case." *Id.* at 281.

Here, the equities favor an award of attorney's fees. Based on the facts alleged in the complaint, the defendants knowingly infringed on the USOC's trademarks. The USOC sent two cease and desist letters in June of 2009, demanding that the camp stop using improper simulations of the Olympic symbol and the word "Olympik." Those letters were unsuccessful. Subsequently, the USOC made "repeated attempts" to gain the camp's compliance with the Olympic and Amateur Sports Act. These attempts proved fruitless, and as a result, the USOC was forced to bring suit in January 2010—months after the camp was notified of its infringing conduct. Although a "putative defendant[ ] ha[s] every right to decline pre-litigation requests without adverse consequences, [it] must do so in good faith–that is, believing that [it] ha[s] a colorable claim of right to engage in the

11

challenged behavior." *Green*, 486 F.3d at 104.

Here, the facts do not suggest that the camp acted in good faith, under a belief it could use the Olympic symbol and the name "Camp Olympik" without violating the Act. The camp's recalcitrance can be inferred: the camp was provided with copies of the Act's relevant provisions. The Act is clear that unauthorized simulations of the word Olympic, or the Olympic symbol, that tend to cause confusion, are not allowed for the purpose of inducing the sale of services. *See* 36 U.S.C. § 220506. The fact that the camp had actual knowledge of the Act's terms makes it very unlikely that the camp believed it had a claim of right to continue its infringing conduct. The facts in the complaint, taken as true on default, are that the camp's violations were "intentional, willful and without regard to the USOC's rights," and that the camp "has gained profits" from its infringement. (Compl. at 7.) In light of these circumstances, the Court finds that the camp engaged in deliberate, willful infringement, and that its conduct was culpable. The Court further finds, by clear and convincing evidence,[4] that the circumstances of this case make it an "exceptional" one entitling the prevailing party to attorney fees. Thus, attorney fees are properly awarded. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (upholding district court award of attorney fees on the defendant's default because all factual allegations in the complaint were deemed true, including the allegation of willful infringement) (citing *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007,

---

[4] Although the Third Circuit Court of Appeals has not addressed the issue of whether or not exceptionality must be established by clear and convincing evidence, other courts have so held. *See, e.g.*, *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992) ("[W]e agree with the Federal Circuit that the prevailing party must demonstrate the exceptional nature of a case by clear and convincing evidence before a district court should decide whether to make the award.") (internal citations omitted); *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 471 (Fed. Cir. 1985).

12

1023 (9th Cir. 2002)).

### 2. The Fee Request is Insufficiently Supported

The Court may only award "reasonable" attorney fees. A reasonable fee is one "adequate to attract competent counsel, but which does not produce windfalls to attorneys." *Public Int. Research Group of N.J. v. Windall*, 52 F.3d 1179, 1185 (3d Cir. 1995). To determine a reasonable fee award, courts use the lodestar method to calculate a presumptively reasonable fee. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001). This method requires that the court multiply the number of hours reasonably spent on the litigation by the reasonable hourly rate for the work completed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In determining whether the number of hours expended were reasonable, a court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Public Int. Research Group of N.J.*, 51 F.3d at 1188.

A reasonable hourly rate is the prevailing market rate in the relevant community. *Loughner*, 260 F.3d at 180. The relevant community is the judicial district that is the forum of litigation, unless either the need for special expertise required counsel from a distant district or local counsel were unwilling to handle the case. *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). In such a case, the court would look to the prevailing market rate in the forum where counsel usually practices. *Id.* To assess whether an hourly rate is reasonable, the court "should assess the experience

13

and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The party seeking attorney fees has the burden to prove that its request is reasonable. *Dellarciprete*, 892 F.2d at 1183. Where, as here, the defendant has defaulted by failing to appear in the action, the allegations in the complaint relating to the amount of damages are *not* presumed to be true. See *Comdyne I, Inc.*, 908 F.2d at 1149. Instead, the prevailing party "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard [of reasonableness]." *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

It is clear from the foregoing that a court may not simply rubberstamp a fee request. Indeed, the court of appeals has admonished courts to subject fee requests to a "thorough and searching analysis," advising courts to "go line, by line, by line through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) (internal citations omitted).

Here, the USOC has failed to meet the exacting standards required to support its claim for attorney fees. There is no evidence from which the Court can determine that *either* the number of hours spent, or the hourly rates claimed, are reasonable. The USOC submitted only one declaration, which summarized, in cursory fashion, the names, titles, rates, and hours spent for all personnel on this matter. (Decl. of Barry L. Cohen, Doc. No.

14

10.) The declarant is an attorney at the firm representing the USOC. Although this declarant may be able to speak to the amount of time he *personally* expended on the litigation, as well as his *own* hourly rate, he fails to explain how he has personal knowledge of the time the other attorneys spent. Even as relates to his own time, he offers no evidence that his rate is the prevailing market rate for an attorney of his experience, skill, and reputation, or that the number of hours expended on each task was reasonable.

Accordingly, the Court shall hold in abeyance the motion for default judgment as to its request for attorney fees and costs to permit the USOC another opportunity to submit adequate evidence supporting its request. The USOC shall submit, no later than thirty days from the date of this Order, supplemental briefing sufficient to support its claim for attorney fees.

### III. Conclusion

The USOC has shown that it is entitled to default judgment. The Court will grant in part, deny in part, and hold in abeyance in part the USOC's motion for default judgment (Doc. No. 10.). Specifically, the Court grants the USOC's motion as to liability and its request for a permanent injunction, denies its request that the camp to file a written report with the Court and serve it on the USOC, denies its request to order the camp to destroy its infringing materials, and holds in abeyance its request for fees and costs. An appropriate order and decree follows.

| | |
|---|---|
| November 4, 2010 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OLYMPIC
COMMITTEE, a federally chartered
corporation,

    Plaintiff,

    v.

TOBYHANNA CAMP CORPORATION
d/b/a CAMP OLYMPIK, et al.,

    Defendants.

NO. 3:10-CV-162

(JUDGE CAPUTO)

## ORDER AND DECREE

**NOW**, this 4th day of November, 2010, **IT IS HEREBY ORDERED** that the USOC's motion for default judgment (Doc. No. 10) is granted in part, denied in part, and held in abeyance in part. Specifically:

(1) The camp is ENJOINED to immediately cease all use of its trade name "Camp Olympik."

(2) The camp is PERMANENTLY ENJOINED AND RESTRAINED from using, for the purpose of trade or to induce the sale of goods or services, (i) the word "Olympic," by itself or in combination with any other words; (ii) any simulation of the word "Olympic" (including "Olympik") tending to cause confusion or mistake, to deceive, or to falsely suggest a connection with the USOC or any Olympic activity; (iii) the symbol of the International Olympic Committee, consisting of five interlocking rings, or any simulation of this symbol falsely representing association with, or authorization by, the USOC. This prohibition includes, but is not limited to, using any of the foregoing on any advertising materials, signage, promotional and administrative materials, invoices, letterhead, business cards, packaging, supplies, websites, or bags.

(3) The USOC's request that the camp file a report in writing under oath detailing its compliance with the Court's decree is DENIED.

(4) The USOC's request that the camp destroy infringing materials is DENIED.

(5) The request for costs and fees is HELD IN ABEYANCE. The USOC is directed to submit sufficient evidence supporting its request for costs and fees within thirty days from the date of this Order. The USOC is further advised that failure to respond in the manner explained in the Court's opinion will result in a denial of its request.

                                               /s/ A. Richard Caputo
                                               A. Richard Caputo
                                               United States District Judge